OCT 19 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**VIRGINIA:**

### BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTERS OF
FREDERICK HOPE MARSH

VSB Docket Nos. 08-032-075404, 09-032-077180, and 09-032-076013

### MEMORANDUM ORDER

This matter came on to be heard on September 29, 2010, by the Disciplinary Board of the Virginia State Bar (the Board) by teleconference upon an Agreed Disposition between the parties, which was presented to a panel of the Board consisting of Paul M. Black, J. Casey Forrester, Samuel R. Walker, Werner H. Quasebarth, laymember, and William E. Glover, Chair presiding (the Panel).

Renu M. Brennan, Assistant Bar Counsel, appeared as counsel for the Virginia State Bar, and Respondent, Frederick Hope Marsh, appeared with counsel, James C. Roberts.

Pursuant to the Rules of the Supreme Court of Virginia, Part 6, Section IV, Paragraph 13-6.H, the Bar and Respondent entered into a written proposed Agreed Disposition and presented same to the Panel.

The Chair swore the Court Reporter and polled the members of the Panel to determine whether any member had a personal or financial interest that might affect or reasonably be perceived to affect his or her ability to be impartial in these matters. Each member, including the Chair, verified they had no such interests.

The Panel heard argument from counsel and reviewed Respondent's prior disciplinary record with the Bar and thereafter retired to deliberate on the Agreed Disposition. Having

considered all the evidence before it, a majority of the Panel accepted the Agreed Disposition.

A.  **In the Matter of Frederick Hope Marsh, VSB Docket No. 09-032-077180, Complainant: Leonia Jackson**

### I.  FINDINGS OF FACT

1. On or about April 19, 2004, Complainant Leonia Jackson (Mr. Jackson) retained Respondent Frederick Hope Marsh, Esq., (Respondent) to defend him on a warrant in debt by Ford Motor Credit Company (Ford) against Mr. Jackson for a debt owed on a car Mr. Jackson purchased for his daughter.

2. Respondent successfully defended Mr. Jackson at the district court level.

3. Ford appealed the district court's ruling to the Charlottesville Circuit Court.

4. On March 23, 2005, the Charlottesville Circuit Court faxed Respondent a scheduling order setting the matter for trial on September 2, 2005.

5. Respondent did not provide Mr. Jackson with the scheduling order, nor did he advise Mr. Jackson of the trial date before the date of trial, September 2, 2005.

6. Respondent did not conduct any discovery or take any affirmative steps on Mr. Jackson's behalf.

7. Respondent responded to requests for admission on Mr. Jackson's behalf.

8. On the day of trial, Respondent alleges he left a message for Mr. Jackson on Mr. Jackson's cell phone advising him that trial was scheduled for that same day.

9. Mr. Jackson did not know that trial was scheduled for September 2, 2005, and he thus did not appear at the trial.

10. Respondent mistakenly believed that the trial was scheduled for 2 p.m., instead of 1 p.m., on September 2, 2005, and he thus was late to the trial. Respondent tried to call the Court to advise the Court he would be late.

11. Respondent appeared at trial, but Mr. Jackson did not, as he was unaware of the date.

12. The Circuit Court awarded judgment to Ford.

13. Respondent noted an appeal of the judgment in the Charlottesville Circuit Court, but the appeal was not perfected.

14. Mr. Jackson subsequently complained about Respondent's conduct to the Virginia State Bar.

15. Upon receipt of the bar complaint, Respondent and Henry L. Marsh, III, Esquire, Respondent's uncle and the senior attorney at the firm of Hill, Tucker & Marsh, P.L.L.C., (the firm) where Respondent was employed, met with Mr. Jackson on November 14, 2008.

16. At that time, Respondent and Henry L. Marsh, III, Esq., agreed to pay Mr. Jackson the sum of fourteen thousand dollars ($14,000.00) which included the amount of the judgment against Mr. Jackson and his attorneys' fees.

17. On November 14, 2008, Respondent and Henry L. Marsh presented Mr. Jackson with a "Full Release of All Claims Agreement" (release) which provided that as consideration for the fourteen thousand dollars ($14,000.00) Mr. Jackson released Respondent and the firm, its partners, members, and employees, from all claims he may have had against Respondent or the firm, or its partners, members, or employees, by virtue of Respondent's representation of Mr. Jackson in the suit by Ford against him.

18. Mr. Jackson was not represented by independent counsel in the reviewing and execution of the release, which he signed on November 14, 2008.

## II. NATURE OF MISCONDUCT

Such conduct by Frederick Hope Marsh constitutes misconduct in violation of the following provisions of the Rules of Professional Conduct:

**RULE 1.3 Diligence**

(a) A lawyer shall act with reasonable diligence and promptness in representing a client.

**RULE 1.4 Communication**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**RULE 1.7 Conflict of Interest: General Rule.**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

1. the representation of one client will be directly adverse to another client; or

2. there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**RULE 1.8 Conflict of Interest: Prohibited Transactions**

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice, except that a lawyer may make such an agreement with a client

of which the lawyer is an employee as long as the client is independently represented in making the agreement.

B. **In the Matter of Frederick Hope Marsh, VSB Docket No. 09-032-076013, Complainant: Walter T. Brown, Sr., #33867-183**

## I. FINDINGS OF FACT

1. In April 2003 Complainant Walter T. Brown, Sr., (Mr. Brown) retained Respondent to sue the Sheriff of the City of Richmond and a deputy sheriff who slammed a door shut on two fingers of Mr. Brown's right hand, injuring him.

2. In April 2005, Respondent filed suit on Mr. Brown's behalf.

3. In May 2005, defendants demurred and filed responsive pleadings to the suit. Defendants requested a reply to their affirmative defenses.

4. In July and August 2005, Respondent requested Mr. Brown's medical records and bills from the Medical College of Virginia (MCV).

5. Defendants served discovery on Mr. Brown. On October 7, 2005, the Court entered an order compelling responses to Defendants' discovery and ordered Respondent to pay $405.00 in attorneys' fees to opposing counsel.

6. In October 2005, Respondent engaged a consultant to conduct a diagnostic interview/vocational assessment of Mr. Brown. The assessment was performed in October 2005. The vocational testimony did not support Mr. Brown's case.

7. In July 2006, the Court granted partial summary judgment to defendants and dismissed the City of Richmond Sheriff's Office with prejudice.

8. In July 2006, Defendants deposed Mr. Brown. Mr. Brown believed the deposition was a settlement meeting.

9. Respondent's file does not reflect that he deposed any defendants or that he propounded any discovery on his client's behalf.

10. Throughout the pendency of the matter, trial was continued from August 29 and 30, 2006 to November 13, 2006, and then from November 13, 2006 to April 5, 2007, and finally to September 13, 2007.

11. Defendants' counsel subpoenaed two witnesses to appear at trial. Respondent did not subpoena any witnesses to appear at trial.

12. Defendants' counsel filed a motion *in limine* and scheduled a hearing thereon for September 6, 2007.

13. On September 6, 2007, Respondent non-suited the case.

14. Respondent did not advise Mr. Brown that he non-suited the case, nor did Respondent advise Mr. Brown of his plan to non-suit the case or of his rationale in non-suiting the case.

15. In September 2007, Mr. Brown was transferred to a different jail, but Mr. Brown asserts Respondent was notified of the transfer.

16. In November 2007, and thereafter, Mr. Brown wrote to Respondent requesting a *status* update. He also provided Respondent the contact information for his sister, Lorraine Jackson, and Mr. Brown asked Respondent to contact her or Mr. Brown.

17. Respondent did not answer Mr. Brown's letters or otherwise communicate the status of the case to Mr. Brown. From a June 26, 2008, letter it appears that Mr. Brown believed his July 2006 deposition was a settlement meeting. It further appears from the letter that Mr. Brown understood that the matter was to be tried in September 2007, but he then heard nothing further from Respondent.

18. In July 2008, Mr. Brown complained about Respondent's conduct to the Virginia State Bar.

19. Upon receipt of the bar complaint, on August 14, 2008, Respondent and Mr. Henry L. Marsh, III, Esq., the senior partner in Respondent's firm, met with Mr. Brown and advised him of the case status. When Respondent and Mr. Marsh met with Mr. Brown, they apologized for not communicating with him and offered him the sum of five thousand dollars ($5,000.00).

20. After Respondent met with Mr. Brown and after the bar complaint was filed, Respondent sent Mr. Brown a letter advising him in writing of the non-suit and of the basis of Respondent's decision to non-suit the case. In this same letter, Respondent offered Mr. Brown the sum of five thousand dollars ($5,000.00) in exchange for a release of liability.

21. On August 18, 2008, Respondent's firm presented Respondent's sister, Ms. Lorraine Jackson, with a "Full Release of All Claims Agreement" (release) which provided that as consideration for the five thousand dollars ($5,000.00), which the firm paid to Ms. Jackson, Mr. Brown released Respondent and the firm, its partners, members, and employees, from all claims he may have had against Respondent or the firm, or its partners, members, or employees, by virtue of Respondent's representation of Mr. Brown on account of the firm's representation of Mr. Brown regarding an April 21, 2003, incident in the City Jail in Richmond, Virginia.

22. Ms. Jackson signed this release as Mr. Brown's attorney-in-fact. Neither Mr. Brown nor Ms. Jackson was represented by independent counsel with respect to the presentation, review, and execution of the release.

## II. NATURE OF MISCONDUCT

Such conduct by Frederick Hope Marsh constitutes misconduct in violation of the following provisions of the Rules of Professional Conduct:

**RULE 1.3 Diligence**

    (a) A lawyer shall act with reasonable diligence and promptness in representing a client.

**RULE 1.4 Communication**

    (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**RULE 1.7 Conflict of Interest: General Rule.**

    (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

        1. the representation of one client will be directly adverse to another client; or

        2. there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**RULE 1.8 Conflict of Interest: Prohibited Transactions**

    (h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice, except that a lawyer may make such an agreement with a client of which the lawyer is an employee as long as the client is independently represented in making the agreement.

**C.**   **In the Matter of Frederick Hope Marsh, VSB Docket No. 08-032-075404, Complainant: Alzena E. Mayfield**

### I. FINDINGS OF FACT

1. In 2001, Complainant Alzena E. Mayfield and her sons retained Brent Jackson, Esq., of the firm of Hill, Tucker & Marsh, P.L.L.C., to represent them in a suit against the City of Petersburg based on actions by the City's police.

2. Brent Jackson and Respondent initially handled Ms. Mayfield's case.

3. During the representation Mr. Jackson left the firm, and Henry L. Marsh, III, and Respondent assumed responsibility for the case.

4. On June 16, 2003, Respondent filed suit on behalf of Ms. Mayfield and her son Michael Jones against the City of Petersburg and other defendants in the Circuit Court of the City of Petersburg. The suit bore case number CL03000237-00.

5. The suit was not served on the defendants within one year.

6. On March 30, 2004, Respondent filed a second lawsuit in the name of Ms. Mayfield and Michael Jones, as well as Anthony Jones, against the City and the other defendants in the Circuit Court of the City of Petersburg. This suit bore Case No. CL04000131-00. This second lawsuit arose out of the identical facts and contained the same five original claims as in the first lawsuit.

7. On or about June 22, 2004, the Court mailed a Notice of Dismissal of the first lawsuit, Case No. CL03000237-00, to Respondent. The Court moved to dismiss the first lawsuit because defendants had not been served with process within one year of the filing of the Motion for Judgment in the Clerk's Office.

8. On or about June 22, 2004, Henry L. Marsh, III filed an Amended Motion for Judgment in the Circuit Court of the City of Petersburg.

9. On July 15, 2004, Respondent filed a Motion for Non-Suit of the first suit, Case No. CL03000237-00. Respondent alleged that defendants were not served with the suit and that Respondent had filed a new action, Case No. CL04000131-00.

10. By Order dated July 16, 2004, the Circuit Court of the City of Petersburg granted Respondent's Motion for Non-Suit of the first suit, Case No. CL03000237-00, pursuant to Section 8.01-380 of the Code of Virginia, 1950, as amended.

11. Neither Respondent nor Henry L. Marsh, III advised Ms. Mayfield or her sons that the Court issued a motion to dismiss the first suit for failure to serve it within one year, nor did they explain to their clients that they moved for and obtained a non-suit of the first lawsuit, nor did they explain to Ms. Mayfield or her sons what a non-suit is or its' significance.

12. In April 2005, the Court placed the second suit, Case No. CL04000131-00, on its docket for April 21, 2005, because, again, service had not been effected upon the defendants.

13. Neither Respondent nor Henry L. Marsh, III advised Ms. Mayfield or her sons about the April 21, 2005, appearance.

14. On April 21, 2005, Respondent appeared and moved for a non-suit pursuant to Section 8.01-380 of the Code of Virginia, 1950. The cover letter requesting a non-suit of the second suit did not inform the Court that the second non-suit was a non-suit of the same cause of action.

15. Neither Respondent nor Henry Marsh advised Ms. Mayfield or her sons about their motion for a non-suit, nor did they explain to their clients what a non-suit is, nor did they explain its significance to their clients.

16. On or about April 26, 2005, the Court entered an Order of Non-Suit as to Case CL04000131-00. The Order was a second non-suit of the same cause of action.

17. On May 27, 2005, Respondent filed a third suit by Ms. Mayfield, Michael Jones, and Anthony Jones against the City and other defendants. This case bore Case No. CL05-190. This third lawsuit arose out of the identical facts and contained the same five original claims as the first two lawsuits.

18. Case No. CL05-190 was served on the defendants.

19. On June 21, 2005, the defendants demurred to the suit, and they filed pleas of immunity and of the statute of limitations and moved to dismiss the suit with prejudice for failure to serve the suit upon defendants within one year of filing.

20. On the date of the hearing, September 28, 2005, Respondent filed a response to the demurrer.

21. By Order entered October 20, 2005, the Court vacated its April 26, 2005, Order of Non-Suit of the Case No. CL04000131-00 for lack of notice to defendants, and granted defendants' motion to dismiss the lawsuit and amended motion of judgment with prejudice.

22. By separate Order entered October 20, 2005, the Court sustained Defendants' plea of the Statute of Limitations with respect to Counts I, II, IV, and V of the Motion for Judgment and dismissed Counts I, II, IV, and V with prejudice. The Court also sustained Defendants' Demurrer to Count III of the Motion for Judgment and dismissed Count III with prejudice, and the Court denied Plaintiffs' Motion for Leave to Amend the Motion for Judgment.

23. Neither Respondent nor Henry L. Marsh, III advised their clients of the September 28, 2005, hearing, or of the results of the hearing, including the fact that Complainant's lawsuit was dismissed with prejudice.

24. Despite several calls and at least one letter to Respondent's office in 2004 and 2005, Ms. Mayfield had not been advised of the case status.

25. Not having heard anything from Respondent or Henry L. Marsh, III, Ms. Mayfield asked another attorney to advise her as to the status of the case.

26. The attorney advised Ms. Mayfield that the case had been dismissed.

27. Ms. Mayfield called Henry Marsh and asked him about the case status.

28. In response, Henry L. Marsh, III came to Ms. Mayfield's home and met with her and her son. Mr. Marsh admitted to Ms. Mayfield that he and his firm had made a mistake in the handling of her case. As a result, he offered to handle litigation against Ms. Mayfield and her sons without charge for one year. She accepted his offer.

29. In August 2006 Ms. Mayfield was sued by the bus driver of her granddaughter's bus for defamation per se and intentional infliction of emotional distress. Pursuant to her agreement with Henry L. Marsh, III, she requested the Marsh firm defend her.

30. Respondent primarily handled Ms. Mayfield's case.

31. Other than filing a counterclaim on her behalf, Respondent did little to represent Ms. Mayfield.

32. Respondent failed to conduct any discovery, nor did he designate any witnesses in Ms. Mayfield's defense.

33. On March 26, 2007, Plaintiff noticed Ms. Mayfield's deposition for April 5, 2007.

34. Respondent did not advise Ms. Mayfield that her deposition was a deposition. She believed it was a settlement meeting.

35. Respondent did not advise Ms. Mayfield that the trial date was April 26, 2007.

36. Ms. Mayfield learned of the trial date through Plaintiff's witness subpoenas.

37. Ms. Mayfield brought two witnesses to the trial. Because Respondent failed to designate witnesses in accordance with the Court's scheduling order, Ms. Mayfield's two witnesses could not testify absent agreement of Plaintiff's counsel. Accordingly, Respondent agreed to non-suit Ms. Mayfield's counterclaim in exchange for Plaintiff's counsel's agreement to allow the two witnesses to testify.

38. Respondent did not obtain his client's permission to non-suit the counterclaim prior to taking the non-suit at trial.

39. The trial was not recorded or transcribed.

40. The jury found in favor of the plaintiff on both counts, and a $250,000.00 judgment was entered against Ms. Mayfield.

41. Respondent timely noted her appeal, and Ms. Mayfield retained separate counsel to handle the appeal.

42. Respondent prepared a written statement of facts in support of the appeal.

43. The appeal was not properly perfected and was dismissed.

44. The judgment against Ms. Mayfield is still outstanding.

## II. NATURE OF MISCONDUCT

Such conduct by Frederick Hope Marsh constitutes misconduct in violation of the following provisions of the Rules of Professional Conduct:

**RULE 1.3 Diligence**

(a) A lawyer shall act with reasonable diligence and promptness in representing a client.

**RULE 1.4 Communication**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

## III. IMPOSITION OF SANCTION

Having considered all the evidence before it and determined to accept the Agreed Disposition, the Disciplinary Board **ORDERS** that Respondent's license to practice law in the Commonwealth of Virginia is suspended for a period of THREE YEARS. Respondent's THREE-YEAR suspension is effective beginning January 1, 2011.

It is further ORDERED that Respondent must comply with the requirements of Part Six, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia. The Respondent shall forthwith give notice by certified mail, return receipt requested, of the suspension of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing attorneys and presiding judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his care in conformity with the wishes of his client. Respondent shall give such notice within 14 days of the effective date of the suspension, and make such arrangements as are required herein within 45 days of the effective date of the suspension. The Respondent shall also furnish proof to the Bar within 60 days of the effective day of the suspension that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of the suspension, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System at the Virginia State Bar. All issues concerning the adequacy of the notice and arrangements required by Paragraph 13-29 shall be determined by the Virginia State Bar Disciplinary Board, unless the Respondent makes a timely request for hearing before a three-judge court.

It is further **ORDERED** that costs shall be assessed by the Clerk of the Disciplinary System pursuant to the Rules of the Supreme Court of Virginia, Part Six, Section IV, Paragraph 13-9.E.

It is further **ORDERED** that the Clerk of the Disciplinary System shall send an attested copy of this order by Certified Mail, Return Receipt Requested, to Frederick Hope Marsh at his last address of record with the Virginia State Bar, being Frederick Hope Marsh, Hill, Tucker & Marsh, P.L.L.C., The Free Press Building, Suite 301, 422 East Franklin Street, Richmond, VA 23219, and by regular mail to Respondent's counsel, James C. Roberts, Troutman Sanders LLP, P.O. Box 1122, Richmond, VA 22318-1122, and a copy hand-delivered to Renu M. Brennan, Assistant Bar Counsel, Virginia State Bar, 707 East Main Street, Suite 1500, Richmond, VA 23219.

Terry S. Griffith, Chandler & Halasz, was the court reporter for the hearing and transcribed the proceedings.

ENTERED: October 4, 2010

VIRGINIA STATE BAR DISCIPLINARY BOARD

By: _____
WILLIAM E. GLOVER,
CHAIR

- 11 -

A COPY TESTE:
_____
BARBARA SAYERS LANIER
CLERK OF THE DISCIPLINARY SYSTEM